IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GE YANG,

    Petitioner,                    No. CIV S-09-3001 EFB P

    vs.

JOHN MARSHALL,

    Respondent.               ORDER

_____/

        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges a 2008 judgment of conviction entered against him in Sacramento County Superior Court on charges of possession of methamphetamine, and possession of opium and methamphetamine for sale while personally armed with a firearm. He seeks relief on the grounds that the trial court violated his Fourth Amendment rights when it denied his motion to suppress evidence, and the prosecutor committed prejudicial misconduct during closing argument. Upon careful consideration of the record and the applicable law, the court finds that petitioner's application for habeas corpus relief must be denied.

---

[1] The case proceeds before the undersigned pursuant to the parties' consent. Dckt Nos. 5 and 10; *see* 28 U.S.C. § 636; *see also* E.D. Cal. Local Rules, Appx. A, at (k)(1)-(2).

## I. Background[2]

Defendants Yer Yang and Ge Yang, who are wife and husband, appeal following convictions for possession of controlled substances (opium and methamphetamine) for sale while personally armed with a firearm (Health & Saf.Code, §§ 11351, 11378; Pen.Code, § 12022, subd. (c)[3]; possession of methamphetamine by Ge Yang ( Health & Saf.Code, § 11377, subd. (a)); and child endangerment by Yer Yang (§ 273a, subd. (a)).  In separate appellate briefs but joining in each others' contentions, defendants assign reversible error to denial of their suppression motion, evidentiary rulings, and prosecutorial misconduct.  We shall order correction of the abstract of judgment.  We shall otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The prosecution charged both defendants with (1) possession of a controlled substance (opium) for sale on November 2, 2006 (Health & Saf.Code, § 11351), while personally armed with a firearm (§ 12022, subd. (c)); and (2) possession of methamphetamine for sale on November 2, 2006 (Health & Saf.Code, § 11378), while personally armed with a firearm.  A third count was dismissed.  Count Four alleged child endangerment likely to produce great bodily injury (§ 273a, subd. (a)) by Yer Yang only, on November 2, 2006.  Count Five alleged possession of methamphetamine (Health & Saf.Code, § 11377, subd. (a)) by Ge Yang only, on March 21, 2007.

The trial court denied defendants' motion to suppress all evidence as the product of a warrantless search of defendants' home.  According to evidence adduced at the hearing on the suppression motion, the police went to the house because they had information that a person on searchable probation (who is not a party to this case) lived there, and there might be drug dealing there.  The officers saw drugs and a gun in plain view during a protective sweep for officer safety.  They froze the scene and obtained a search warrant.

Evidence adduced at trial included the following:

On November 2, 2006, three uniformed police officers went to defendants' residence shortly before 7:00 p.m. to conduct a search.  A male outside the house (La Yang), who said he lived there, confirmed it was also the residence of the person the police sought

---

[2] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[3] Undesignated statutory references are to the Penal Code.

2

(who apparently was not home at the time), and let the police into the house through a side door that opened into the kitchen.[4] There were a lot of people in the house (later determined to be residents, relatives, and one friend). A female teen squeezed in through the door, past an officer, and ran through the house, making the officers anxious she was trying to alert people of the police presence, people who might arm themselves. When the girl disregarded the officer's direction to stop, Officer Joseph Ellis ran after her. She ran into and out of the garage. The officer entered the garage and saw a "bunch of smoke in the air" (which smelled something like cigarette smoke) and a piece of plywood, large enough to conceal someone, against the wall. The officer, assuming someone was there, said, "put your hands up," and two males (defendant Ge Yang and a friend) emerged. The officer saw smoking pipes in the garage but did not collect them because he could not tell what was smoked in them.

Meanwhile, Officer David Hogge conducted a protective sweep of the house for officer safety, to round up any people who were in the house and place them in the living room. La Yang accompanied him. The officer checked two bedrooms. He then approached the master bedroom, which La Yang said was his parents' room. The officer entered, saw no one in the bedroom, turned into a hallway within the bedroom which led to a walk-in closet and bathroom, and saw an older Asian female (Yer Yang) squatting at a small wooden table at the open closet entrance. On the table were a scale, scissors, chopped pieces of a hard black substance (later determined to be opium), some of it in small ("one-by-one") baggies, and numerous empty baggies. A small female Asian child stood holding a baggie open in front of Yer Yang. The officer handcuffed Yer Yang, looked around "to take a look at my surroundings" and noticed a gun holster and magazine on the top shelf of a small closet opposite the walk-in closet. He stood on "tippy toes" to see if the magazine was connected to a handgun, and he saw that it was.

The officers summoned a narcotics team and froze the scene while they obtained a search warrant, which, when executed, disclosed methamphetamine in the master bedroom and two loaded guns.

Officer Ellis testified at trial that defendant Ge Yang gave a statement at the house, through an interpreter, that (1) the opium was his-he used it to help with back pain; (2) methamphetamine found in a fanny pack in the master bedroom was his-he used it to make himself "feel good"; (3) a shotgun found in the house was his-he used it for hunting and did not notice the serial number was

---

[4] The People say the officers told La Yang they intended to conduct a probation search, but the cited testimony was given at the suppression hearing, not at trial.

3

filed off; and (4) a pistol found in the house was his, having been abandoned there months earlier by his brother-in-law.

Ge Yang was not kept in custody the day of the search, due to poor health. When he was arrested a few months later pursuant to an arrest warrant, he had methamphetamine in his shirt pocket and jacket pocket (which formed the basis for Count Five-possession of methamphetamine).

A criminalist testified the substances found in the master bedroom were opium (a total of 43 grams or about an ounce and a half) and methamphetamine (a total of 12 grams or less than half an ounce), some of which had been separated into small baggies. Opiates contain morphine and codeine, can be used as painkillers, and are highly addictive.

Other evidence taken from the master bedroom closet area included empty baggies, scissors, and a digital scale. The search also revealed a surveillance camera hooked up to a small television in the garage.

Police Detective Chou Vang testified as an expert on the sale of opium and methamphetamine. He opined defendants were selling the opium found in the house, because a regular user who used opium only for himself would not need the scale or separate baggies. A wife preparing doses for her husband might use a scale, scissors and baggies, but it is more likely she would know, just as the chronic user would know, how much to pinch off without having to undergo the "painstaking" process of cutting and weighing it. A heavy user of opium could use one and a half grams per day, or 45 grams per month. Forty-three grams costs about $700 purchased in bulk and, individually packaged for sale, could have a street value of $2,400.

Vang opined the methamphetamine was also possessed for sale, based on the scale and how the drug had been divided into multiple baggies. A heavy user of methamphetamine could use one and a half grams per day. Vang said drug dealers often have firearms for protection against customers or dealers who may attempt to steal from them. Drug dealers also use surveillance cameras to protect against theft and surprise visits from the police.

A police detective testified to the danger of exposing small children to drugs.

Evidence was adduced concerning the family's income and expenses.

Defendants did not dispute possession of the drugs but disputed selling drugs. The defense elicited evidence that the police did not find items often found where drugs are sold, such as police

scanners, cell phones or pagers, pay-owe sheets, customer lists, large amounts of cash, or expensive items. No one knocked on the door or phoned while the police were at defendants' house. The police did not question neighbors as to whether there were a lot of people coming and going, as might be expected if drugs were being sold.

Defendant Yer Yang (wife) testified for the defense. She and her husband are Hmong. They did not sell drugs. Ge Yang uses all the drugs himself to relieve pain from physical injuries to his back, intestine and stomach, which occurred in 1973 and 1974. He is very addicted to opium and smokes it in the garage. Yer Yang cuts and packages it to regulate his intake, because otherwise he uses it too quickly and comes to her for money to buy more, and she does not want him to overdose. She doles it out to him in individual doses. The amount confiscated by police would have lasted him a couple of months. The little girl was not helping Yer Yang but had appeared just before the officer entered. Ge Yang said she did not know there were guns in the house.

Defendants' older children testified in defense of their parents. The teen testified she ran to get away from the officers.

The jury found Yer Yang: Guilty of possessing opium for sale, while personally armed with a firearm (Count One); guilty of possessing methamphetamine for sale, while personally armed with a firearm (Count Two); and guilty of child endangerment likely to produce great bodily injury (Count Four).

The jury found Ge Yang: Guilty of possessing opium for sale, while personally armed with a firearm (Count One); guilty of possessing methamphetamine for sale, while personally armed with a firearm (Count Two); and guilty of possession of methamphetamine (Count Five).

The trial court sentenced Yer Yang to prison for five years, consisting of the lower term of two years for possessing opium for sale, enhanced by the lower term of three years for the firearm. The court imposed concurrent terms of one year, four months for possessing methamphetamine for sale, plus a three year firearm enhancement, and four years for the child endangerment.

The court sentenced Ge Yang to prison for seven years, eight months, consisting of the middle term of three years for possessing opium for sale, plus a four year enhancement for the firearm, plus a consecutive one-third middle term of eight months for possessing methamphetamine (Count Five). The court imposed a concurrent

////

////

5

term of two years for possessing methamphetamine for sale (Count Two) plus the four year firearm enhancement.

*People v. Yer Yang*, No. C058719, 2009 WL 2874523 (Cal.App.3 Dist. Sept. 9, 2009), at **1-3.

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the

6

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008). *See also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85 (2011). That presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

803 (1991)).  However, when it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.* Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

**B.  Petitioner's Claims**

**1.  Fourth Amendment**

Petitioner's first claim asserts entitlement to habeas relief based on the trial court's denial of his motion to suppress the evidence obtained as a result of the warrantless search of his home, allegedly in violation of the Fourth Amendment. Pet. at 4.[5]  The California Court of Appeal denied this claim after a through review of the relevant facts and applicable law. *Ter Yang*, 2009 WL 2874523, **4-8.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).  There is no evidence before the court that petitioner did not have a full and fair opportunity to litigate

---

[5] This court will refer to page numbers of the parties' pleadings by using the automated numbers assigned by the court's electronic filing system.

8

his Fourth Amendment claims in state court. On the contrary, he filed and litigated a motion to suppress in the trial court. *See* Clerk's Transcript on Appeal (CT) at 82-88; Reporter's Transcript on Appeal (RT) at 19, *et seq*. Accordingly, petitioner's Fourth Amendment claim is barred in this federal habeas proceeding. *Stone*, 428 U.S. at 494.

## 2. Prosecutorial Misconduct

Petitioner's second claim is that the prosecutor committed misconduct by "shifting the burden of proof to defendants" during closing argument. Pet. at 4.

The California Court of Appeal denied petitioner's claim of prosecutorial misconduct, reasoning as follows:

> Defendants contend they were denied due process and a fair trial under the Fifth and Fourteenth Amendments of the United States Constitution when the prosecutor in closing argument, over defense objection, committed misconduct by shifting the burden of proof to defendants to prove their innocence and improperly commenting on the fact that the defense did not call witnesses to corroborate their defense. We disagree.
>
> **A. Background**
>
> During cross-examination by Ge's attorney, Officer Ellis testified that pipes for smoking were found in Ge's garage but were not seized because it was not clear they had been used to smoke illegal drugs. In direct examination, Detective Vang described the type of pipe typically used to smoke opium but indicated other types could also be used for that purpose.
>
> In closing argument to the jury, the prosecutor said that, while the officers found pipes in Ge's garage, there was no evidence that Ge Yang had an opium pipe like the one described by the detective.
>
> Yer Yang's counsel disagreed in closing argument, recalling "there was testimony that there was an opium pipe there." Ge's counsel in closing argument found it "real interesting" that "there w[ere] pipes and they weren't collected. I think that's interesting because pipes kind of indicate personal use. And the People aren't prosecuting a personal use case here; they're prosecuting a sales case. So it's kind of interesting that they didn't collect the pipes. Because it really wouldn't strengthen their case for personal use [sic]; it would actually kind of take away from it a little bit. But, the officer, I don't know if he testified these were brand-new pipes, clean, never been used. I don't think he said that. But he sure didn't collect them. Because it helps us if he would have collected

9

them."

In rebuttal argument, the prosecutor agreed it was her burden to prove each element beyond a reasonable doubt and defendant was not required to put on any case, but "[t]hey [defendants] decided to put on a case. And so you have to evaluate the strength of the case that they put on. [¶] It was brought up that there were pipes in the house that the police didn't book and that's because it would have helped our case [sic]. [¶] Well, if the defense was going to bring witnesses in, wouldn't it be a logical witness to bring those pipes [sic] to say this is evidence that the officers overlooked; this is evidence of pipes that are being used for smoking opium; they are 100 percent illegal pipes."

The trial court overruled defense objections.

The prosecutor continued: "Logical witnesses. The defense also argued about there was speculation that there w[ere] other people in the house who made money. [¶] The only testimony we had is from Xue. Xue testified, and we can go back and look in the record, that she makes $25,000 a year. There's no other evidence of who else works in the household. Vue came, but he said at that time he was not working at all. So wouldn't the logical person be to call [sic] the witness, a logical witness, someone- [¶] . . . [¶] . . . who is in the house . . . ."

The trial court overruled a defense objection, and the prosecutor continued that it would be logical to call as a witness any person who was contributing money to the household.

**B. Analysis**

"A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"' [Citations.]" (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

Defendants fail to show any deceptive or reprehensible methods in this case.

Contrary to the defense contention, the prosecutor did not improperly shift the burden of proof to defendants. The prosecutor did nothing more than make fair response to defendants' arguments and comment on defendants' failure to introduce material evidence or call logical witnesses as part of the defense

10

> case they presented. (*People v. Wash* (1993) 6 Cal.4th 215, 262-263 [prosecutor may comment on defendant's failure to introduce material evidence or to call logical witnesses].) "[A] prosecutor may argue to a jury that a defendant has not brought forth evidence to corroborate an essential part of his defensive story." (*People v. Varona* (1983) 143 Cal.App.3d 566, 570.)
>
> Since we conclude there was no prosecutorial misconduct, we need not reach the question of prejudice. We nevertheless observe that we see no possible prejudice, under any standard, based on the pipe issue, because the fact that Ge Yang used pipes to smoke opium is not inconsistent with his also selling opium. This is a matter of common sense, plus Detective Vang testified a drug dealer can also be a drug user.
>
> There was no prosecutorial misconduct.

*Yer Yang*, 2009 WL 2874523, at **15 -16.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, No. 08-99022, 2010 WL 5157357, *4 (9th Cir. Dec. 21, 2010). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. *Darden*, 477 U.S. at 181-83. *See also Towery*, 2010 WL 5157357, *4 ("When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable"). Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)

"Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993). In considering claims of prosecutorial

misconduct involving allegations of improper argument, the court must examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181-83; *Donnelly*, 416 U.S. at 643; *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002). "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Darden*, 477 U.S. at 181 (citation omitted). The issue is whether the "remarks, in the context of the entire trial, were sufficiently prejudicial to violate [petitioner's] due process rights." *Donnelly*, 416 U.S. at 639; *United States v. Robinson*, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . .").

After a review of the record, the court concludes that the prosecutor in this case did not commit prejudicial misconduct in closing argument. The main thrust of the prosecutor's argument was that petitioner had failed to introduce witnesses to support his defense theory. "A prosecutor may, consistent with due process, ask a jury to convict based on the defendant's failure to present evidence supporting the defense theory." *Menendez v. Terhune*, 422 F.3d 1012, 1034 (9th Cir. 2005). *See also United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991) (It is not improper for a prosecutor to comment on the defense's failure to present exculpatory evidence, provided that the comments do not call attention to the defendant's own failure to testify). The prosecutor's remarks were also, in part, a response to the defense argument. This is permissible. *See People v. Young*, 470 U.S. 1, 12-13 (1985) ("if the prosecutor's remarks were 'invited,' and did no more than respond in order to 'right the scale,' such comments would not warrant reversing a conviction"); *United States v. de Cruz*, 82 F.3d 856, 863 (9th Cir. 1996) (holding prosecutor's improper rebuttal argument to be harmless in part because it was an invited response). Nor did the prosecutor attempt to shift the burden of proof or imply that petitioner had a duty to produce any evidence. On the contrary, she conceded that she had the burden of proof and reminded the jury that petitioner did not have to "put on a case." (RT at 980.)

////

1  Petitioner has failed to demonstrate that the decision of the state courts rejecting his claim of
2  prosecutorial misconduct was contrary to or an unreasonable application of federal law.
3  Accordingly, he is not entitled to relief on that claim.

**III.  Conclusion**

    For all of the foregoing reasons, IT IS HEREBY ORDERED that:

    1.  Petitioner's application for a writ of habeas corpus is denied.

    2.  The Clerk is directed to close the case.

    3.  Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the court declines to issue a certificate of appealability.

DATED:  December 7, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE